UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 05-0803 SBA |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | [Docket No. 132] |
| IVAN LUQUE LOPEZ, et al., | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant Ivan Luque Lopez' "Motion for an Order to Compel Discovery and Reveal Confidential Informants" [Docket No. 132]. Having read and considered the papers submitted by the parties, the Court hereby DENIES Defendant's Motion.

**BACKGROUND**

In late 2005, DEA had identified brothers Sergio and Jose Vega-Robles as the heads of a large-scale methamphetamine and cocaine drug trafficking organization in Northern California. On November 17, 2005, a Title III wiretap was authorized for telephones linked to the Vega-Robles brothers. The wiretap was set up for approximately 11 days. During that time, calls were intercepted between Sergio and other defendants where they discuss defendant Lopez transporting drugs between Northern and Southern California. Sergio would tell Lopez how fast he should drive and when to get a place to stay down south. Lopez would also talk directly to whomever he was to meet to get drugs. Sergio discussed with Lopez finding a driver in the Los Angeles area who could transport narcotics back to the San Francisco Area. On one occasion, Lopez was in Los Angeles together with Rafael Adorno to pick up drugs, but the source did not have them ready to ship.

On November 29, 2005, Sergio had it arranged to have Lopez drive a car back to drop off the money, to pick up a load of drugs and bring them back to Benicia. Lopez was instructed to meet

with "Ming" under a highway overpass, which he did. Lopez ended up spending the night there at Sergio's direction.

A person loading the car with drugs, told Lopez that only 19 kilograms would fit in the car, because the kilograms were too fat to all fit. Sergio told Lopez to leave behind whatever did not fit. The car was driven by another male to a residence in Moreno, California. Inside the home, another 45 kilograms of cocaine were recovered.

Lopez had known Sergio and Jose Vega Robles from their hometown in Mexico. Lopez was in a bind financially and came to the United States to work with the brothers. He knew that the brothers were making good money. They told him he could be a driver of drugs between Northern and Southern California and he agreed.

The first time he drove from Northern California to Southern California, it was a trial run. He was basically given instructions on what to do. For the second time, he was to drive down south and drive back up north transporting drugs. However, for some reason, the drugs were not ready and Lopez drove back to Northern California without them. For the third time, Lopez was to transport approximately 20 kilograms of cocaine.

While Lopez was en route returning to the Bay Area, he was stopped for a traffic violation. The car was impounded and an inventory search was conducted. In the rear quarter panel of the car, approximately 20 kilograms of cocaine were found.

In an indictment filed on December 15, 2005, Lopez was charged with conspiracy to possess with intent to distribute cocaine, a violation of 21 USC § 846.

## **LEGAL STANDARD**

The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Under Federal Rule of Criminal Procedure 16, "[u]pon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following: (i) any relevant written or recorded *statement by the defendant* if the statement is within the government's possession, custody, or control; and the attorney for the government

2

knows--or through due diligence could know--that the statement exists . . ." Fed. R. Crim. P. 16(a)(B) (emphasis added).

Under Rule 16(a)(E), "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and (i) the *item is material to preparing the defense*; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(E)(emphasis added).

However, Rule 16 "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case.  Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses [until said witness has testified on direct examination in the trial of the case]." Fed. R. Crim. P. 16(a)(2).

## **DISCUSSION**[1]

### I.    Rule 16

The defense argues that discovery provided thus far hints at a low level role that Lopez played in the drug operations.  The defense argues that the evidence suggests that Lopez is merely taking orders from Sergio "for every move he makes."  For example, the defense explains that:

> Special Agent Gina Giachetti writes: 'On November 29, 2005, Sergio coordinated to have Ivan LUQUE-LOPEZ drive the same Honda back to Los Angeles to drop off the money and pick up the load of drugs . . . Later that day Sergio VEGA-ROBLES informed IVAN LOPEZ-LUQUE (sic) to stop driving around and get a hotel room untl he gets a call from the point of contact for the drug load pick up . . . On November 30, 2005 IVAN LOPEZ-LUQUE (sic) received a phone call from an unknown male who instructed IVAN LOPEZ-LUQUE (sic) to travel to Moreno, California . . . [Later] a phone call from an unknown male instruct[s] IVAN LOPEZ-LUQUE (sic) to travel to Interstate 10 and then to Interstate 215 to Riverside. . . . On the same date . . surveillance observed IVAN LUQUE-LOPEZ . . .stopped at the Toy's R Us parking lot . . .IVAN LUQUE LOPEZ called an unidentified male (UM) informing the UM that he is lost."

---

[1] The Court does not reach the issue raised by the government that the defense has not complied with the criminal local rules. While the government's argument may have some merit, given the Court's ruling, the issue is moot.

3

(Mot. at 7.)

The defense also asserts that according to the government, Sergio Vega-Robles "coordinated" to have Lopez drive a Honda to Los Angeles to pick up drugs. The defense contends that use of the term "coordinated" implies that Sergio Vega-Robles engaged in some type of oral or written communication with Lopez or possibly others involved in the conspiracy. The defense argues that such communications, if they exist, would be material and relevant to Lopez's defense that he played a minimal role in this conspiracy. The defense contends that under Brady and Rule 16, Lopez is entitled to receive the actual audio and visual surveillance tapes that accurately show the role that Lopez played.

The types of evidence to which Lopez refers are ordinarily discoverable under Rule 16 if such evidence is "material to preparing the defense." However, the government argues that it has turned over all exculpatory information. In light of its position, a court order compelling discovery of information the government contends it does not have would be futile. The defense, for its parts, merely speculates that the government may have additional evidence notwithstanding the governments representations to the contrary.

The defense also seeks the reports or notes of debriefings that the government had with co-defendants and material witnesses in this case, including, but not limited to Sergio and Jose Vega-Robles, and Adorno. However, as the government argues, such materials are not discoverable under Rule 16 because they constitute reports, memoranda, or other internal government documents made by government agents in connection with investigating or prosecuting the case. *See* Fed. R. Crim. P. 16(a)(2).

The defense also requests all reports that mention any information supplied to the government by any witnesses regarding Lopez and the role he played in this organization. However, the government correctly argues that a defendant cannot discover statements made by government witnesses, except after the witness has testified. *See* 18 U.S.C. § 3500.

**II. Confidential Informants**

The defense asserts that five confidential sources were used by investigators in this case. The defense explains that based on the discovery currently in the possession of defense, it is unclear

4

which of the five confidential sources provided information on Lopez. The Defense explains that Lopez is "associated with" a white Honda Accord and according to Special Agent Gina Giachetti,

> on or about November 16, 2005, Agents received information from a Confidential Source (CS) that a 2-door white Honda Accord . . . was equipped with hidden compartments in the rear quarter panels used to transport monies made from narcotics themselves. The CS who provided this information is working off felony drug charges nad has proven reliable through federal and state investigations.

(Mot. at 10.)

The defense argues that disclosure of the confidential sources' identity, or the information such sources provided to the agents, is necessary, contending that there is a "high probability that one or more of these sources may provide material and relevant information regarding Lopez's minimal role" in the drug activities related to Lopez's case.

The defense specifically seeks: 1) the recordings and transcripts, if any, of all conversations between any of the five confidential sources and Lopez; 2) all DEA 6 Reports of the debriefings of any of the five confidential sources with the government relating to Lopez; and 3) all material pertaining to the confidential sources' cooperation with the government, on this or any other case. The defense cites to *Roviaro v. United States*, 353 U.S. 53 (1957), *United States v. Sai Keung Wong*, 886 F.2d 252, 255 (9th Cir. 1989), and *United States v. Fixen*, 780 F.2d 1434, 1440 (9th Cir. 1986), in support of his position that the Court should review, in camera, the confidential informant evidence to determine whether it should be disclosed.

In *Roviaro*, the Supreme Court explained that the Government has a privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. *Id*. However, the scope of the privilege is limited by its underlying purpose. *Id*. Thus, one limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. *Id*. 353 U.S. at 60-61.

In *Sai Keung Wong*, 886 F.2d at 255-56, the Ninth Circuit explained the factors that a court

5

should use to determine whether the identify of an informant should be disclosed: 1) whether the testimony would be "relevant and helpful" to the defendants' case, especially in terms of the relationship between the asserted defenses and the likely testimony of the informant; and 2) the government's interest in protecting the safety of an informant. *Id*. The Ninth Circuit further explained that the burden of proof is on the defendants to show need for the disclosure and that the mere suspicion that information will prove helpful is insufficient to require disclosure. *Id*.

In *United States v. Fixen*, the Ninth Circuit explained that a district court need not conduct an in camera hearing whenever the identity of an informant is requested. Rather, it is within the judge's discretion whether to hold such a hearing, and a decision denying a defendant's request for an in camera proceeding should be overturned only if there is an abuse of discretion. *United States v. Fixen*, 780 F.2d 1434, 1440 (9th Cir. 1986).

The government argues that the confidential informants, which the defense discuses, were originally mentioned in wiretap affidavits. However, as the defense acknowledges, Lopez was not listed as a target in the wiretap motions. As such, the government contends it is not clear how these informants would have any knowledge of Lopez.

As explained by the Ninth Circuit, in *Sai Keung Wong* the burden of proof is on the defendants to show need for the disclosure and that the mere suspicion that information will prove helpful is insufficient to require disclosure. *Sai Keung Wong*, 886 F.2d at 255-56. However, the defense establishes little more than suspicion that the confidential informants' identities or information will be helpful to the defense. Defendant contends that "disclosure of the confidential sources' identity . . . is necessary because there is a high probability that one or more of these sources may provide . . . relevant information." (Mot. at 10 (emphasis added)) The defense's declared basis for requesting disclosure of the confidential sources is that Lopez was "associated with a white Honda" and that a confidential source had refereed to such a car. However, such facts establish mere suspicions that the confidential sources will have useful information for the defense.

Moreover, as the government points out, Lopez's alleged "minor role" in the offense is a sentencing issue, not a pretrial issue. Indeed, defendant has not shown how facts concerning his alleged "minor role" in the offense conduct are relevant to issue of guilt or other issues for trial. The

6

Ninth Circuit's holding in *United States v. Spires*, cited by the defense to support his claim for disclosure, is not to the contrary. In *Spires*, the Ninth Circuit held that a district court abuses its discretion if it fails to hold an in camera hearing on disclosure "[w]here a defendant makes a showing that identification of the government's confidential informant may be relevant and helpful to a possible defense at trial." *United States v. Spires*, 3 F.3d 1234, 1239 (9th Cir. 1993)(emphasis added).

### III. Plea Negotiations

The government contends that Lopez is angry that other defendants got better deals than he is getting and, in his motion, inappropriately involves the court in plea negotiations by mentioning other defendants, their pleas, and their respective culpabilities. *See* Fed. R. Crim. P. 11(c)(1) (a court must not involve itself in plea negotiations). However, while the defense asserts that "[t]o date, co-defendants Colby Phillips, Anthony Hollingsworth and Rafael Odorno have pled guilty and have been sentenced to violations of 21USC Section 844 (phone counts)," the defense does not in any other way, "involve the court" in any plea negotiations by way of his motion to compel.

### **CONCLUSION**

For the reasons set forth above, IT IS HEREBY ORDERED THAT Defendant's "Motion for an Order to Compel Discovery and Reveal Confidential Informants" [Docket No. 132] is DENIED.

IT IS SO ORDERED.

Dated: 9/9/08

SAUNDRA BROWN ARMSTRONG
United States District Judge